IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JAMES ARTHUR BIGGINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-1084 (MN) |
| | ) | |
| PERRY PHELPS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM OPINION

James Arthur Biggins, James T. Vaughn Correctional Center, Smyrna, Delaware, Pro Se Plaintiff.

October 24, 2019
Wilmington, Delaware

**NOREIKA, U.S. District Judge:**

## I. INTRODUCTION

Plaintiff James Arthur Biggins ("Plaintiff"), an inmate at the James T. Vaughn Correctional Center ("JTVCC") in Smyrna, Delaware, filed this action pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.* and the Rehabilitation Act ("Rehab Act"), 29 U.S.C. § 101. (D.I. 3). He appears *pro se* and has been granted leave to proceed *in forma pauperis.* (D.I. 5). The Court proceeds to screen the Complaint (D.I. 3) and its amendment (D.I. 7), construed as the operative pleading, pursuant to 28 U.S.C. § 1915(e)(2)(b) and § 1915A(a).

## II. BACKGROUND

The Complaint contains two counts and names thirty defendants. Count I alleges cruel and unusual punishment in violation of the Eighth Amendment and Count II alleges unequal treatment in violation of the Fourteenth Amendment.

Plaintiff complains of the medication dispensing policy at the JTVCC and alleges that on four or five occasions he did not receive his prescribed morning medications. Plaintiff alleges the first incident occurred on May 25, 2019, when he awoke and prepared himself for the morning medical call "that is usual between 2:45 a.m. and 3:30 a.m." (D.I. 3 ¶ 31). Plaintiff waited until after 4:00 a.m. and asked Defendant Sergeant Maeshack ("Maeshack") if "they called medication yet." (*Id.*). Maeshack told Plaintiff that meds had been called over an hour ago and Plaintiff replied that medication could not have been called because Plaintiff is housed in the first cell and he would have heard the call. (*Id.*). Plaintiff asked about getting his medication, but no one called the infirmary for him. (*Id.*) Plaintiff alleges that Defendant Nurse Amanda ("Amanda") is the individual who failed to give him his morning medications. (*Id.* ¶ 47).

1

Plaintiff alleges that on or about May 28, 2019,[1] he awoke and waited for the medication call, and he did not receive his medications. (*Id.* ¶ 32). At breakfast, Plaintiff spoke to Defendant C/O Alexander ("Alexander") and asked her, "had they called meds yet?" (*Id.*). Alexander first answered yes, and then told Plaintiff to ask Maeshack who "handles all that stuff." (*Id.*). Plaintiff alleges Alexander indicated she would call the infirmary after breakfast so that Plaintiff could receive his medication, and that he "never was called." (*Id.*).

Plaintiff alleges that on June 2, 2019, he awoke and prepared himself for the medication call at 2:45 a.m. or 3:00 a.m. (*Id.* ¶ 33). Plaintiff saw Defendant C/O. Gomez ("Gomez") and assumed medication had been called and returned to his cell to wait for the medication. (*Id.*). When Plaintiff had not received his medication, he asked Gomez about it and Gomez told Plaintiff he had "called meds about an hour ago." (*Id.*). Plaintiff responded that he had been up quite early and had not heard anyone call medication. (*Id.*). Gomez then told Alexander and Defendants C/O Holcombe ("Holcombe"), C/O Ingram ("Ingram"), C/O Taylor ("Taylor"), and C/O Kobus ("Kobus") that "he had an inmate . . . [who] was arguing with him about not getting his meds." (*Id.* ¶ 35).

Plaintiff had breakfast and sometime after 6:00 a.m. Gomez, Alexander and Defendant C/O Cumington "(Cumington") came to Plaintiff and asked him if he wanted them to see if he could still get his morning medication. (*Id.* ¶¶ 36-39). Plaintiff replied "no," that it was too late now. (*Id.* ¶ 40). Plaintiff explained that he should have been sent to the infirmary early, that three hours had now passed, and knowing he had not received his morning medication correctional officers are supposed to automatically call the infirmary. (*Id.*). Plaintiff complained to Cumington

---

[1] The Complaint refers to a May 28, 2019 date, while a grievance attached to the Complaint refers to a May 30, 2019 date. (*Compare* D.I. 3 ¶ 32 *with* D.I. 3-1 at 3).

that the procedures and policies to make sure an inmate receive his medication were not being followed. (*Id*. ¶ 45).

Later that morning, Plaintiff spoke to Defendant Squeaz ("Squeaz") about the morning's events and asked Squeaz to call the infirmary so that Plaintiff could receiving his morning medication with his mid-day medication, and Squeaz said he would. (*Id*. ¶ 46). Later Squeaz told Plaintiff he had made the call and spoke to Amanda who told Squeaz, "no." (*Id*. ¶ 47). Plaintiff alleges that Squeaz did nothing to see that Plaintiff received his medication. (*Id*.). Plaintiff alleges that policy and procedures required Squeaz to contact the shift commander and inform him of the refusal to dispense Plaintiff's medication. (*Id*. ¶ 48). In turn, the shift commander is supposed to contact the medical provider regional medical director. (*Id*.). Plaintiff alleges that Squeaz retaliated against him "for protecting the First Amendment rights." (*Id*.).

That evening, Plaintiff received his night medication from Amanda. (*Id.* ¶ 49). Plaintiff asked her why he could not receive his morning medication when she came to dispense the midday medication and Amanda explained that if an inmate does not receive his morning medication by 7:00 a.m., medical is prohibited by policy from distributing that medication. (*Id*. ¶ 50). Plaintiff does not believe this is the actual policy because not many nurses follow it. (*Id*.). Plaintiff alleges that JTVCC and Delaware Department of Correction ("DOC") policies mandate that correctional officers assigned to their buildings waste no time in calling the infirmary for inmates to get their medications. (D.I. 3 at 4, n.1).

Plaintiff alleges that on June 12, 2019, he left the chow hall around 6:00 p.m. and noticed that the night nurse was also leaving but no one had called medication for the upstairs half of the building. (D.I. 7 ¶ 51). Plaintiff caught up with the nurse and she told Plaintiff that she was done dispensing the medication. (*Id*.). Plaintiff told the nurse that he had been eating and no one had

notified him of the medication call. (*Id*. ¶ 52). The nurse dispensed Plaintiff's medication before she left. (*Id*. ¶¶ 52-57).

Plaintiff alleges that on June 25, 2019, he awoke at 2:10 a.m. to prepare himself to get his morning medication. (*Id*. ¶ 58). Plaintiff alleges that a little after 4:00 a.m., he asked Ingram if he had called medication yet and Ingram indicated that he had. (*Id*. ¶ 58). Plaintiff explained that he had not heard anything. (*Id*.). Ingram replied, "well somebody else came off" and continued what he was doing. (*Id*.). Plaintiff later spoke to another inmate about the medication call and was told that it is hard to hear Ingram because "he never calls loud." (*Id*. ¶ 59).

Plaintiff alleges that the policy illustrates a complete denial to administer medication, results in Plaintiff having unnecessary pain and suffering, and does not serve a justifiable penological purpose. (D.I. 3 ¶ 50). Plaintiff alleges that the parties involved demonstrated that they are willfully acting with a sufficiently culpable state of mind in risking his daily health and safety and placing Plaintiff under imminent danger. (*Id*. ¶ 51).

Plaintiff submitted two grievances on May 30, 2019. The first, sought an investigation of staff regarding the failure to distribute Plaintiff's medications. (D.I. 3-1 at 2-3). The grievance was returned as unprocessed by Defendant Informal Grievance Chair Matthew Dutton ("Dutton"). (*Id*. at 2). The returned grievance advised Plaintiff to write to his Unit Commander with his request for an investigation of the actions of staff personnel. (*Id*. at 5).

The second, a medical grievance, complained that Plaintiff was not receiving his prescribed medication, inquired why Plaintiff was not called for morning medications, and complained that the policy as designed is useless. (D.I. 3-2 at 2, 3). The medical grievance was received by the medical unit on June 5, 2019. (*Id*. at 2). Plaintiff alleges that Amanda was aware of the grievance filed against her. (D.I. 3 at 7, n.4).

Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages. (D.I. 3 ¶¶ 52-59; D.I. 7 at 6-7).

### III. LEGAL STANDARDS

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013); *see also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (citations omitted).

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 U.S. at 327-28; *see also Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989); *Deutsch v. United States*, 67 F.3d 1080, 1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when deciding Federal Rule of Civil Procedure 12(b)(6) motions. *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the Court must grant a plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A complaint may be dismissed only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Though "detailed factual allegations" are not required, a complaint must do more than simply provide "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (internal quotation marks omitted). In addition, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *See Williams v. BASF Catalysts LLC*, 765 F.3d 306, 315 (3d Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Twombly*, 550 U.S. at 570). Finally, a plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 574 U.S. 10 (2014). A complaint may not be dismissed for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 10.

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must

6

plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, assume their veracity and determine whether they plausibly give rise to an entitlement to relief. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016); *see also Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## IV. DISCUSSION

### A. ADA and Rehab Act

The Complaint invokes both the ADA and the Rehab Act. To state a claim under Title II of the ADA, Plaintiff must allege that "(1) he is a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability." *Kokinda v. Pennsylvania Dep't of Corr.*, No. 17-3166, 2019 WL 2576391, at *4 (3d Cir. June 24, 2019) (quoting *Haberle v. Troxell*, 885 F.3d 170, 178 (3d Cir. 2018)). The same standards govern claims pursuant to Section 504 of the Rehab Act. *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 274 (3d Cir. 2012) (citing *McDonald v. Commonwealth of Pa., Dep't of Pub. Welfare, Polk Ctr.*, 62 F.3d 92, 94-95 (3d Cir. 1995)) ("Congress made clear its intention that identical standards were to be applied to both Acts. . . . Whether suit is filed under the Rehabilitation Act or under the Disabilities Act, the substantive standards for determining liability are the same").

The Complaint does not alleges that Plaintiff has a disability or that he was excluded from a DOC program or service because of a disability. The ADA and Rehab Act claims are deficiently

7

pled and will be dismissed as frivolous and for failure to state claims upon which relief may be granted.

B. **Personal Involvement/Respondeat Superior**

The Complaint names as Defendants Commissioner Perry Phelps ("Phelps"), Commissioner Claire DeMatteis ("DeMatteis"), Bureau Chief Prison Healthcare, Bureau Chief Prison Management, Warden Dana Metzger ("Metzger"), Deputy Warden Phil Parker ("Parker"), Deputy Warden Prison Healthcare Natasha Hollingsworth ("Hollingsworth"), security chiefs John Brennan ("Brennan") and Sanota ("Sanota"), Connections Regional Medical Director, Connections Regional Medical Administrator, JTVCC Site Medical Director, JTVCC Site Nursing Director, JTVCC Site Nursing Administrator, and numerous unnamed Defendants Captains, Area Captains, Staff Lieutenants, Area Lieutenants. There are no allegations directed against most of the foregoing defendants. Phelps and DeMatteis are only mentioned in the Complaint in the prayer for relief. (*See* D.I. 3 ¶¶ 53-54; D.I. 7 at 6). Defendants Shift Commander and Connections Regional Medical Director are only mentioned in the Complaint as individuals to be contacted when an inmate does not receive medication. (*See* D.I. 3 ¶ 48).

Liability in a 42 U.S.C. § 1983 action is personal in nature, and to be liable, a defendant must have been personally involved in the wrongful conduct. In other words, defendants are "liable only for their own unconstitutional conduct." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes*, 135 S.Ct. 2042 (2015). Hence, respondeat superior cannot form the basis of liability. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005); *see also Alexander v. Forr*, 297 F. App'x 102, 104-05 (3d Cir. 2008) (instructing that a constitutional deprivation cannot be premised merely on the fact that the defendant was a prison supervisor when the incidents set forth in the complaint occurred).

8

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The United States Court of Appeals for the Third Circuit has "recognized that 'there are two theories of supervisory liability, one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations.'" *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010)).

With regard to the above defendants, the Complaint merely provides labels and conclusions and formulaic recitations of elements of a cause of action. Moreover, the Complaint either has no allegations towards the above Defendants or, with regard to supervisory officials, contains no factual allegations that they established and maintained a policy which directly caused the constitutional harm and/or directed others to violate a policy or, as the person in charge, had knowledge of and acquiesced in alleged violations by subordinates.

The claims raised against the above Defendants are deficiently pled and will be dismissed as frivolous and for failure to state claims upon which relief may be granted.

C. **Medical Claims under 42 U.S.C. § 1983**

In Count I, Plaintiff alleges violations of his Eighth Amendment rights when he did not receive his morning medication on three or four occasions, all in violation of prison policy.[2] The

---

2   It does not appear that Plaintiff exhausted his administrative remedies for the medical needs claim prior to filing the Complaint. The medical grievance was received by the medical

9

Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976). In order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Estelle*, 429 U.S. at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104. A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837, 844 (1994). However, allegations of medical malpractice are not sufficient to establish a Constitutional violation. *See White v. Napoleon*, 897 F.2d 103, 108-09 (3d Cir. 1990) (citations omitted); *see also Daniels v. Williams*, 474 U.S. 327, 332-34 (1986) (negligence is not compensable as a Constitutional deprivation).

The medical needs claims are deficiently pled. While the Complaint indicates that Plaintiff receives prescribed medication, it does not identify Plaintiff's medical condition or speak to a serious medical need. In addition, the allegations do not indicate that Plaintiff's medications were deliberately withheld from him and, in many, if not most instances, there was a medication call but for reasons unknown (other than a soft voice), Plaintiff was not aware of the call. At most, the allegations speak to negligence which does not trigger constitutional protections.

Count I is deficiently pled and will be dismissed as frivolous and for failure to state claims upon which relief may be granted.

---

unit on June 5, 2019, just one week prior to the time Plaintiff commenced this action. (*See* D.I. 3-2 at 2).

### D. Equal Protection

Count II alleges unequal treatment in violation of the Fourteenth Amendment. Plaintiff alleges "discrimination against his person under a 'class-of-one' doctrine." (D.I. 7 at 2).

A plaintiff may bring an equal protection claim under two legal theories: (1) by alleging a defendant treated him differently from other similarly situated individuals because of his membership in an identifiable or protected class, such as race, religion, sex, or national origin, *Mack v. Warden Loretto FCI*, 839 F.3d 286, 305, n.112 (3d Cir. 2016); or (2) in a "class of one", by alleging a defendant treated him differently from others similarly situated for arbitrary or irrational reasons, *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Phillips v. County of Allegheny*, 515 F.3d at 243.

As pled, the conclusory allegations do not provide a basis to show how Defendants violated Plaintiff's right to equal protection on the sporadic dates when Plaintiff did not receive his morning medication. *See e.g.*, *Tindell v. Beard*, 351 F. App'x 591 (3d Cir. 2009).

Count II is deficiently pled and will be dismissed as frivolous and for failure to state claims upon which relief may be granted.

### E. Retaliation

The Complaint makes a passing reference that Squeaz retaliated against Plaintiff for protecting the First Amendment rights. "Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under § 1983." *White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990). It has long been established that the First Amendment bars retaliation for protected speech. *See Crawford-El v. Britton*, 523 U.S. 574, 592 (1998); *Milhouse v. Carlson*, 652 F.2d 371, 373-74 (3d Cir. 1981).

Proof of a retaliation claim requires Plaintiff demonstrate that: (1) he engaged in protected activity; (2) he was subjected to adverse actions by a state actor; and (3) the protected activity was a substantial motivating factor in the state actor's decision to take adverse action. *Carter v. McGrady*, 292 F.3d 152, 158 (3d Cir. 2002) (citing *Mt. Healthy Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *see also Allah v. Seiverling*, 229 F.3d 220 (3d Cir. 2000) (a factfinder could conclude that retaliatory placement in administrative confinement would "deter a person of ordinary firmness from exercising his First Amendment rights" (citations omitted)).

The single sentence alleging retaliation does not suffice to state a claim. Plaintiff does not identity his protected activity. In addition, the facts relating to Squeaz indicate that once he was notified that Plaintiff had not received his morning medications, Squeaz contacted the infirmary to find out why Plaintiff had not received his medication.

To the extent Plaintiff raises a retaliation claim, it is deficiently pled and will be dismissed as frivolous and for failure to state claims upon which relief may be granted.

**F.   Grievances**

The Complaint names Grievance Chair Dutton as a defendant. There are no allegations directed towards Dutton in the Complaint. His name, however, is on the informal resolution form that was returned as unprocessed for Plaintiff's grievances seeking an investigation of staff regarding the failure to distribute Plaintiff's medications. (D.I. 3-1 at 2). Perhaps this is why he is a named defendant.

The filing of prison grievances is a constitutionally protected activity. *Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006). To the extent Plaintiff attempts to raise a claim based upon the unprocessed grievance, the claim fails because an inmate does not have a "free-standing constitutionally right to an effective grievance process." *Woods v. First Corr. Med., Inc.*, 446 F.

App'x 400, 403 (3d Cir. 2011) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). Plaintiff cannot maintain a constitutional claim based upon his perception that his grievance was not properly processed, that it was denied, or that the grievance process is inadequate.

Therefore, to the extent the claim is raised against Dutton based upon the grievance process, it will be dismissed as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1).

### G. Amendment

Since it appears plausible that Plaintiff may be able to articulate a claim against Defendants or name alternative defendants, he will be given an opportunity to file an amended complaint. *See O'Dell v. United States Gov't*, 256 F. App'x 444 (3d Cir. 2007) (leave to amend is proper where the plaintiff's claims do not appear "patently meritless and beyond all hope of redemption").

## V. CONCLUSION

For the above reasons, the Court will dismiss the Complaint as frivolous and for failure to state a claim upon which relief may be granted pursuant 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) and 1915A(b)(1). Plaintiff will be given leave to amend to cure his pleading defects.

An appropriate Order will be entered.